soil or privilege immediately on its being so caught and killed by the trespasser. Blades v. Higgs, 11 H. L. Cas. 621; 34 L. J. C. P. 286; 11 Jur. N. S. 701; 12 L. T. N. S. 615; Sutton v. Moody, 1 Ld. Raym. 250. And it is difficult to suggest a distinction in principle between oysters caught in a trap upon the premises of the defendant, and game killed upon the premises of the owner of the soil or of the privilege.

It should be the purpose of the court not so much to do abstract justice in a particular case as to establish and make certain the law and the public policy of the state, and in the present instance I am of opinion that both purposes will be served by a reversal of the judgment. The plaintiff, by a disregard of duty in ascertaining and marking the limits of his own franchise, has trespassed upon the franchise of another; and the mere fact that this trespass has resulted in improving the value of the defendants' franchise does not justify the trespass, nor give the plaintiff any right of property in the catch of oysters which has resulted. The plaintiff had rights within the limits of his own franchise which it was the duty of the state to protect, but, when he disregarded his duty and became a mere trespasser, the law owed him no further obligation; and the courts should now refuse to grant him a remedy against those who have merely exercised their rights under their franchise, and have gathered the oysters which have been developed within the limits fixed by the grant. To do otherwise is to defeat the policy of the state, which places upon such holder of a franchise the duty of knowing and designating the limits of his franchise, and makes each case depend upon the evidence of good faith on the part of the trespassers, when, as I have pointed out, there can be no such good faith, because it constitutes a violation of a duty imposed by law.

The judgment appealed from should be reversed.

---

(99 App. Div. 570)

### LICHTENSTEIN v. MOTT.

(Supreme Court, Appellate Division, Second Department. December 15, 1904.)

1. BROKERS—COMMISSIONS—BAD FAITH—QUESTION FOR JURY.

    Where, in an action for broker's commissions under a contract authorizing him to sell the property for $105,000 or more, there was evidence that J. was working on behalf of plaintiff for the sale of the property, and that he, on plaintiff's behalf, might have procured a purchaser at $110,000 instead of $105,000, such evidence required the submission of plaintiff's good faith to the jury.

2. SAME.

    A broker employed to sell real estate for $105,000 or more is not entitled to recover commissions where he might have procured a purchaser at $110,000 instead of $105,000.

3. SAME—EVIDENCE.

    In an action for broker's commissions it was error to refuse to permit defendant to show by a witness that he had been trying for two days to find a certain person, as a witness, who had acted for plaintiff in the sale of the property.

---

¶ 2. See Brokers, vol. 8, Cent. Dig. §§ 48, 49.

Appeal from Special Term, Kings County.

Action by Harry W. Lichtenstein against Mary Augusta Mott, impleaded with others. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant Mary A. Mott appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Frank G. Wild, for appellant.
I. Henry Harris, for respondent.

JENKS, J. We think that there was evidence sufficient to require the submission of the plaintiff's good faith to the jury, and that, as the learned court withdrew that question from it, there must be a new trial. The authority of the plaintiff was to sell the property for $105,000 or more. Mr. Bailey, of the Realty Associates, testifies that Mr. Jonas had offered the property to the associates for $110,000, and that he replied that they would take it provided the terms were satisfactory, as there were questions of title involved that wanted straightening out before they bought it. Mr. Burdick, of the associates, testifies that Mr. Jonas brought him a contract for $110,000, which contained a clause that $5,000 should be paid to Mr. Katz, who was not the owner of the property; that he refused to sign the contract because it was not with the owners of the property, and because the associates would not be "a party to the $5,000," but that he did offer to sign a "straight contract" for $110,000 for the Porterfield, but Mr. Jonas said it could not be delivered "without the $5,000 item." There was some evidence tending to show that Mr. Jonas was working for or on behalf of the plaintiff, for the attorney who represented the defendant in the negotiations testifies that the broker told him that Mr. Jonas had peculiar opportunities, and was "working" the Realty Associates, and the plaintiff admits that he had relations with Mr. Jonas with reference to this property. There was, then, evidence from which the jury might have found that Mr. Jonas, in behalf of the plaintiff, might have procured a purchaser at $110,-000 instead of $105,000. Such a finding would have defeated the plaintiff's claim for commissions. Murray v. Beard, 102 N. Y. 505, 7 N. E. 553; Knauss v. K. B. Co., 142 N. Y. 70, 75, 36 N. E. 867.

It was error for the court to refuse to permit the witness Stearns, called by the defendant, to show that he had been trying for two days to find Mr. Jonas as a witness. Brown v. Barse, 10 App. Div. 444, 42 N. Y. Supp. 306. But probably this was substantially, if not entirely, cured by the testimony of the witness Mr. Wilde, that for two days the defendant had been trying to serve a subpoena on Mr. Jonas.

The judgment and order should be reversed, and a new trial granted, costs to abide the event. All concur; HIRSCHBERG, P. J., in result.